# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47426

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: November 19, 2020 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| TRENTON LEE MAKI, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for trafficking in heroin, being a persistent violator and possession of drug paraphernalia and unified sentence of eight years, with a minimum period of confinement of three years, for trafficking in heroin and being a persistent violator, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Trenton Lee Maki appeals from his judgment of conviction for trafficking in heroin, being a persistent violator, and possession of drug paraphernalia and his sentence for trafficking in heroin. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning, a probation and parole officer came to Maki's residence for a supervision visit. At the time, Maki was on parole and his wife, Tabatha, was on felony probation. Maki's mother-in-law answered the door and let the parole officer inside. The parole officer, familiar with the home's layout based on prior visits, headed toward the bedroom shared

1

by Maki and his wife. On his way to the bedroom, the parole officer noticed Maki asleep in a separate room. However, the parole officer proceeded past that room to Maki's bedroom. Receiving no response after twice knocking on the bedroom door, the parole officer opened the door. He saw several syringes, including one loaded with a black, tar-like substance. Based on this observation, the parole officer requested police backup.

A police officer arrived and searched the room, locating several baggies of heroin and suspected drug paraphernalia. After being given *Miranda*[1] warnings, Maki admitted to possessing the contraband. Maki was charged with trafficking in heroin, I.C. § 37-2732B(a)(6); possession of drug paraphernalia, I.C. § 37-2734A; and a sentencing enhancement for being a persistent violator, I.C. § 19-2514.

Prior to trial, the State filed a notice that it intended to present evidence of Maki's parole status. The State contended it needed to establish the lawfulness of the search and that the search had been done pursuant to Maki's parole waiver and his wife's probation waiver of their rights against unreasonable searches. In response, Maki proposed presenting a stipulation to the jury that the search was lawful. Maki argued that any mention of his parole status would put the jury on notice that he is a convicted felon, which would be prejudicial to him, and that the stipulation would resolve the State's concern. Maki alternatively requested that, if the district court allowed evidence of his parole status, he be allowed to present evidence of his wife's probation status. The district court adopted Maki's proposal, finding that mention of his parole status would be prejudicial, and instructed the State to not present evidence of that nature. This prohibition extended to the parole officer's job title--instead of probation and parole officer, the State was required to use more generic terms such as "agent" or "officer."

At trial, while describing the supervision visit, the parole officer testified that when he knocked on Maki's bedroom door he said, "Probation and parole. Tabatha, are you awake?" Concerned that an objection would further draw the jury's attention to the reference to "probation and parole," Maki did not object. Instead, after the State finished direct examination of the parole officer, Maki moved for a mistrial outside of the jury's presence. In response to Maki's motion, the State requested a curative instruction. Both Maki and the district court agreed that it would be better to not draw the jury's attention to the parole officer's mention of

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

"probation and parole," and the district court declined to issue a curative instruction. However, the district court found that the parole officer's mention of "probation and parole" was not so prejudicial as to warrant a mistrial and denied Maki's motion.

During closing argument, Maki emphasized the evidence connecting the contraband to his wife and asserted he had admitted the contraband was his because he wanted to take the blame for his wife. The jury found Maki guilty of both counts, after which Maki admitted to being a persistent violator. The district court sentenced Maki to a unified term of eight years, with a minimum period of confinement of three years, for trafficking in heroin and being a persistent violator of law. Maki appeals.[2]

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial, an error or legal defect in the proceedings, or conduct inside or outside the courtroom, an error or legal defect that is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

A sentence within statutory limits is reviewed for an abuse of discretion. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006).

## III.

---

[2] Maki was also sentenced to a concurrent term of six months for possession of drug paraphernalia. He does not, however, challenge this sentence on appeal.

## ANALYSIS

Maki argues the district court erred by denying his motion for a mistrial and by imposing an excessive sentence for trafficking in heroin and being a persistent violator. The State responds that the parole officer's mention of "probation and parole" does not rise to reversible error and that the sentence is reasonable. We hold that Maki has failed to show the district court erred in denying his motion for a mistrial or that his sentence is excessive.

### A. Motion for Mistrial

Maki asserts that the parole officer's mention of "probation and parole" had a continuing impact and deprived him of a fair trial. The threshold inquiry is whether the State introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993). The district court held that the parole officer's statement was error because the statement suggested to the jury that Maki was on probation or parole, which was evidence of a past crime prohibited by I.R.E. 404(b). On appeal, the State has not contested the district court's conclusion that the parole officer's statement constituted error. Instead, the State asserts the district court correctly denied the motion for a mistrial because the error did not rise to reversible error. We agree that Maki has failed to show reversible error.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The Idaho Supreme Court clarified the harmless error standard for an objected-to, nonconstitutionally-based error in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020).[3] This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* at 674, 462 P.3d at 1138. The reviewing court must take into account what

---

[3] We recognize that *Garcia* dealt with an objected-to, nonconstitutionally based error that, when shown, shifts the burden to the State of demonstrating that the error is harmless beyond a reasonable doubt. *Garcia*, 166 Idaho at 663, 462 P.3d at 1137; *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). This type of error differs categorically from a motion for a mistrial, where there is no burden shifting in the harmless error analysis. *See, e.g.*, *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105. However, the two standards share common roots in the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18 (1967). *See Garcia*, 166 Idaho at 663, 462 P.3d at 1137; *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105. As the Idaho Supreme Court recently noted, *Chapman*'s harmless error standard has been modified by *Yates v. Evatt*, 500 U.S. 391 (1991). *Garcia*, 166 Idaho at 664, 462 P.3d at 1138. We follow suit by recognizing that *Yates* modifies *Chapman*'s harmless error standard in the mistrial context.

effect the error had or reasonably may have had on the jury (in the context of the total setting) and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Seeking to show that the error was harmless, the State relies on the district court's instructions to the jury that Maki was presumed innocent until proven guilty and that the State had the burden to prove his guilt beyond a reasonable doubt. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). However, as Maki argues, the instructions the State relies on could not have cured the error--the instructions did not notify the jury that it could not rely on the parole officer's statement or find Maki guilty based on past criminal conduct. Instead, the instructions left the jury free to consider propensity evidence in determining Maki's guilt.

Regarding the probative force of the error from the parole officer's statement, Maki asserts the statement revealed he had been convicted of a felony, which was highly prejudicial to his case. Evidence of a defendant's criminal past creates a concern that a jury will convict the defendant solely upon a belief that the defendant is a person of criminal character. *State v. Guinn*, 114 Idaho 30, 34, 752 P.2d 632, 636 (Ct. App. 1988). In *Guinn*, a witness mentioned the defendant was "a convicted felon and ha[d] spent time in the penitentiary." *Id.* at 33, 752 P.2d at 635. Based on this testimony, the defendant moved for a mistrial, which the district court denied. The jury found the defendant guilty of possessing more than three ounces of marijuana, a felony. *Id.* at 32, 752 P.2d at 634. We determined the defendant's credibility was central to the case because he had testified that he possessed less than three ounces of marijuana (a misdemeanor) and the only evidence that he possessed a larger amount stemmed from marijuana found in a residence he jointly possessed with another person. *Id.* at 35, 752 P.2d at 637. Because credibility was central to the case, and the jury may have discounted the defendant's testimony based on his prior felony, we held that there was reversible error.[4] *Id.*

---

[4]     The district court in *Guinn* issued a curative jury instruction regarding the witness's statement. *Guinn*, 114 Idaho at 34, 752 P.2d at 636. On appeal, we held that "a belief [that the defendant is a person of criminal character] is not easily cured by an instruction." *Id.* (citation omitted). Thus, *Guinn* could be read as holding that evidence of a defendant's criminal past creates a high level of prejudice--one that jury instructions cannot easily cure. However, in

To support its contention that the parole officer's statement did not have a significant impact on the jury's verdict, the State cites to a case where a witness testified that the defendant was coming up for parole. *See State v. Frederick*, 126 Idaho 286, 288-89, 882 P.2d 453, 455-56 (Ct. App. 1994). There, we affirmed the district court's decision to admit this evidence. However, the question presented was whether the district court abused its discretion by allowing the evidence over the defendant's objection--notably, there was no motion for a mistrial. *Id.* As such, the analysis in *Frederick* is inapposite.

At Maki's trial, the parole officer was asked what happened after he entered the home. The parole officer testified that, while he went toward the bedroom shared by Maki and his wife, the parole officer saw Maki asleep in another room. The parole officer passed by Maki, proceeded to the bedroom, and knocked on the bedroom door. The parole officer testified he did not receive a response, so he kept knocking and stated, "Probation and parole. Tabatha, are you awake?" He then opened the door and saw the wife on the bed and a loaded syringe on the bed corner. Based on this observation, the parole officer requested police assistance.

The police officer testified that, when he arrived, he searched the bedroom and located several baggies of heroin, one of which was inside a purse. When asked what Maki said when confronted with the contraband, the police officer testified that "[Maki] told me all of the items I found and would find would be his." The police officer further testified that, when he asked

---

*Guinn*, the curative jury instruction was not contained in the appellate record, making it difficult to determine how the instruction factored into our analysis. *See id.* at 33 & n.1, 752 P.2d at 635 & n.1. In any event, *Guinn*'s holding conflicts with later case law, where curative instructions crafted to negate the prejudicial effect helped justify a trial court's denial of a motion for a mistrial. *See, e.g.*, *State v. Hedger*, 115 Idaho 598, 601, 768 P.2d 1331, 1334 (1989) (victim testified that defendant had been in jail); *State v. Maldonado*, 164 Idaho 702, 705-07, 435 P.3d 14, 17-19 (Ct. App. 2018) (prosecutor inadvertently played unredacted version of audio recording where victim stated defendant had spent time in prison); *State v. Frauenberger*, 154 Idaho 294, 301-02, 297 P.3d 257, 264-65 (Ct. App. 2013) (prosecutor asked investigator whether defendant had said he was placed on probation); *State v. Hill*, 140 Idaho 625, 630-31, 97 P.3d 1014, 1019-20 (Ct. App. 2004) (prosecutor asked question indicating defendant had been in jail); *State v. Fluery*, 123 Idaho 9, 11, 843 P.2d 159, 161 (Ct. App. 1992) (in response to prosecutor's question, co-defendant testified that defendant's probation officer was present). So, to the extent *Guinn* suggests that evidence of a defendant's criminal past rises to a level of prejudice not easily cured by a jury instruction, it has been overruled.

Maki why one of the baggies of heroin was in a purse, Maki "said he hid [the baggie] in [his wife's] belongings because her mother wouldn't look in [the wife's] belongings." Finally, the police officer testified that, when asked about the syringes, Maki said "one . . . had blood in it, and the other was one he loaded himself the previous night." In the police officer's on-body video, introduced as part of the State's case, Maki admitted that he had prepared the syringe so he could use it in the morning.

Similar to the witness's statement in *Guinn*, the parole officer's mention of "probation and parole" created a risk that the jury convicted Maki based on his criminal background, but here the risk was minimal. In *Guinn*, the witness's statement directly informed the jury that the defendant was a convicted felon. Here, several factors attenuate the connection between the parole officer's statement and Maki's prior felony record. First, the jury would need to infer from the parole officer's statement that the purpose of his visit was to supervise someone who was on probation or parole. Second, the parole officer's statement was directed at Maki's wife and was made after seeing and passing by Maki, who was sleeping in another room. A reasonable juror would more likely infer that a parole officer would immediately seek out the individual under supervision--not the individual's spouse. This context would tend to draw the jury's attention to Maki's wife, not Maki, as the person the parole officer was there to visit. Third, the jury would need to have extrinsic knowledge that the parole officer's department supervises only felons. Without this knowledge, the jury could have just as well inferred that Maki had committed a misdemeanor in the past, which is less prejudicial than a felony. *See People v. Clark*, 261 P.3d 243, 308 (Cal. 2011) (observing that "a misdemeanor offense . . . is less probative of moral turpitude or dishonesty than is a felony"). These inferential steps made the connection between the parole officer's statement and Maki's prior felony much less direct than in *Guinn* and diminished the probative force of the error in this case.

Another factor distinguishing this case from *Guinn* is that Maki's credibility is not seriously in doubt. Unlike the defendant in *Guinn*, who admitted possessing only a small amount of marijuana, Maki admitted to possessing all the contraband shown to him by the police officer. Although Maki's defense at trial--that he made this admission to take the blame for his wife--suggested that he had a motive to lie, this argument's connection to facts in the record is tenuous. Reviewing the record, there is no reasonable basis for the jury to doubt Maki's

credibility. As such, the parole officer's statement did not have the impeaching effect that was problematic in *Guinn*.

Leaving aside the risk of prejudice discussed above, we note that the parole officer's statement aided Maki's theory of the case, which was that the contraband belonged to his wife, not him. Although two people can jointly possess the same contraband, evidence showing the defendant lived with another person in an area in which contraband is found can give a jury a basis for finding that the defendant did not possess the contraband. *See, e.g.*, *Guinn*, 114 Idaho at 35, 752 P.2d at 637; *see also State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999) (holding that a jury may infer knowledge of the contraband where a defendant is in control of the premises, but additional circumstances showing knowledge are necessary when the control is not exclusive). The State presented evidence to the jury that Maki and his wife shared the bedroom. Aside from Maki's admission, this was the only evidence tying Maki to the contraband--the other evidence, such as the heroin located in the purse, tended to link Maki's wife to the contraband. Given that the parole officer's statement was directed at the wife, it is more likely the jury inferred that the wife was on probation or parole. With this inference, the jury could have concluded, on propensity grounds, that the wife possessed the contraband, which would support Maki's theory of the case. We also note that at the hearing on the State's I.R.E. 404(b) notice, Maki asked the district court that he be allowed to present evidence that his wife was on probation if his parole status was mentioned. This potential beneficial effect of the error provides some counterbalance to the probative force of the error against Maki.

Finally, we note that the prosecutor did not capitalize on the error, either by asking questions to elicit more evidence regarding Maki's criminal past or by bringing up the parole officer's statement during closing argument. As a whole, the probative force of the error was low.

Next, we weigh the probative force of the entire record while excluding the error. Here, as in *Guinn*, there was evidence that two people jointly lived in an area. But unlike *Guinn*, where the defendant admitted to possessing only a limited amount of marijuana, Maki admitted to possessing all the contraband displayed to him by the police officer. More than that, Maki admitted to loading a syringe the night before and stated that he planned on using it in the morning, showing a power and intention to possess at least some portion of the heroin. And as

noted above, there is no reasonable basis in the evidence for questioning Maki's credibility. The probative force of the record, while excluding the error, is high.

Weighing the probative value of the error against the probative value of the record as a whole without the error, we conclude that the error did not have a continuing effect on the trial and are satisfied beyond a reasonable doubt that the error did not contribute to the jury's verdict. The district court did not err in denying Maki's motion for a mistrial.

## B.      Excessive Sentence

Maki contends that the sentence he received for trafficking in heroin and being a persistent violator is excessive. He argues the district court abused its discretion by not giving proper consideration to his familial support, substance abuse history, desire for treatment, mental health concerns, and remorse. Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

## IV.

## CONCLUSION

Maki has failed to show the district court erred by denying his motion for a mistrial or abused its sentencing discretion. Consequently, his judgment of conviction for trafficking in heroin, being a persistent violator, and possession of drug paraphernalia and his sentence for trafficking in heroin and being a persistent violator are affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.